# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVEN BEEBE,

      Petitioner,

v.                                  Case No. 8:20-cv-2134-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.[1]

_____

## ORDER

Steven Beebe, a Florida prisoner, timely[2] filed a counseled petition for writ of habeas

corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition (*id.*), the

---

[1] Beebe named Craig Hanks as a Respondent. It appears that Hanks is an official at Bay Correctional Institution, where Beebe was incarcerated when he filed his § 2254 petition. Beebe states that he is now housed at Blackwater River Correctional Facility. (Doc. 13, p. 5.) The proper Respondent is the Secretary of the Department of Corrections, which has already been named as a Respondent in this action. Accordingly, the Court directs the Clerk to terminate Hanks as a Respondent.

[2] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Beebe's convictions and sentences were affirmed on June 15, 2018. His conviction became final 90 days later, on September 13, 2018, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). Before that date, on August 28, 2018, Beebe filed a petition for writ of habeas corpus in the state appellate court. That petition remained pending until Beebe's motion for rehearing was denied on October 22, 2018. Beebe filed his initial postconviction motion prior to that date, on September 12, 2018. His postconviction motion remained pending until the state appellate court's mandate issued on July 17, 2020. Fifty-three days of untolled time passed before Beebe filed this § 2254 petition on September 9, 2020. Because less than one year of untolled time elapsed, the petition is timely.

response in opposition (Doc. 10), and Beebe's reply (Doc. 12), the Court denies the petition. Furthermore, a certificate of appealability is not warranted.

I.     BACKGROUND

A. Procedural Background

Beebe challenges the judgment entered in case number 2014-014289-CF, a 2014 state court criminal case. (Doc. 1, p. 1.) As Beebe's earlier state court proceedings formed some of the predicate conduct relevant to the challenged 2014 judgment, so the Court addresses those proceedings first.

1. Beebe's 2012 and 2013 State Court Proceedings

In 2012, the victim obtained an injunction against Beebe for protection against repeat violence by him. (Doc. 10-2, Ex. 1, appellate record pp. 20, 279-94.) In two 2012 state court criminal cases, Beebe was charged with aggravated stalking of the victim and the victim's daughter. (*See* Doc. 10-2, Ex. 1, appellate record pp. 20, 50-53; Ex. 3, p. 2, Ex. 4, p. 4.) He was convicted in August 2013, and the state trial court placed him on probation for five years. (*See id.*) As a condition of probation, the court ordered Beebe not to have contact with the victim or the victim's daughter. (*See id.*) The State alleged that Beebe violated the terms of probation by contacting the victim and her daughter. (*See id.*) At a violation of probation hearing in December 2015, before the trial on the case that is the subject of this § 2254 petition, the state court found Beebe to be in violation of

2

probation. (Doc. 10-2, Ex. 1, appellate record pp. 299-306.) The state trial court then revoked Beebe's probation and sentenced him to concurrent terms of five years in prison. (*Id.*)

### 2. Beebe's 2014 State Court Criminal Case

In the 2014 state court criminal case which judgment is challenged in this proceeding, Beebe was charged with one count of aggravated stalking (count one) and three counts of violation of a court order (counts two, four, and five) against the victim, premised on the no-contact order imposed for the 2012 criminal cases. (Doc. 10-2, Ex. 1, appellate record pp. 44-45.) He was also charged with one count of violation of a court order (count three) against the victim's daughter. (*Id.*) In December 2016, a state court jury convicted Beebe as charged. (*Id.*, pp. 82-86.) The state trial court sentenced him to an overall term of 15 years in prison. (*Id.*, pp. 102-09.) The state appellate court per curiam affirmed the convictions and sentences. (Doc. 10-2, Ex. 6.)

Beebe filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10-2, Ex. 20.) The state postconviction court struck the motion in part with leave to amend. (Doc. 10-2, Ex. 22.) After Beebe filed an amended motion, followed by a second amended motion, the state postconviction court entered a final order dismissing in part and denying in part Beebe's postconviction motions. (Doc. 10-2, Exs.

23-25.) The state appellate court per curiam affirmed the denial of relief. (Doc. 10-2, Ex. 33.)

The Court the first reviews the allegations made in each count charged in Beebe's 2014 case, as well as the elements of the offenses, before addressing the facts and grounds for relief. Count one alleged that Beebe committed aggravated stalking of the victim "on or between" February 17, 2014, and April 15, 2014, when he "did knowingly, willfully, maliciously, and repeatedly follow, harass or cyberstalk" the victim "after an injunction for protection against repeat violence had been issued pursuant to [§] 784.06, [Fla. Stat.,] or after any other court imposed prohibition of conduct toward" the victim or the victim's property. (Doc. 10-2, Ex. 1, appellate record p. 44.)

To prove the offense of aggravated stalking, the State had to prove beyond a reasonable doubt that: (1) Beebe knowingly, willfully, maliciously, and repeatedly followed, harassed or cyberstalked the victim; (2) at the time of this act, an injunction for protection against repeat violence or other court-imposed prohibition of conduct toward the victim had been entered against Beebe for the victim's benefit, and (3) Beebe knew that the injunction had been entered against him. *See* § 784.048(4), Fla. Stat; Doc. 10-2, Ex. 1, appellate record p. 63. "Harass" is defined as engaging in a course of conduct directed at a particular person that causes "substantial emotional distress to that person" and serves no legitimate purpose. *Id.*

4

Count two alleged that on February 17, 2014, Beebe knowingly and willfully had contact with the victim after having been ordered by a court not to have contact with the victim as part of his sentence for an earlier qualifying offense. (Doc. 10-2, Ex. 1, appellate record p. 44.) Similarly, count four alleged that Beebe knowingly and willfully had contact with the victim on March 21, 2014, after having been ordered by a court not to have contact with the victim as part of his sentence for an earlier qualifying offense, and count five alleged that Beebe knowingly and willfully had contact with the victim on April 3, 2014, after having been ordered by a court not to have contact with the victim as part of his sentence for an earlier qualifying offense (*Id.*, p. 45.) Count three alleged that on February 17, 2014, Beebe knowingly and willfully had contact with the victim's daughter after having been ordered by a court not to have contact with the victim's daughter as part of his sentence for an earlier qualifying offense. (*Id.*, p. 44.)

To prove each offense violation of a court order, the State had to prove beyond a reasonable doubt that (1) Beebe had been convicted of a qualifying offense; (2) Beebe was ordered to have no contact with the identified individual for the duration of the sentence imposed for that qualifying offense; and (3) on the date alleged, Beebe knowingly and willfully had contact with the identified individual in violation of the order imposed as part of the sentence for that qualifying offense. *See* § 921.244, Fla. Stat.; Doc. 10-2, Ex. 1, pp. 64-67.

For the counts of violation of a court order, the state court jury for Beebe's 2014 case heard that Beebe was convicted of a qualifying offense and that, as part of his sentence for that conviction, he was not to have contact with the victim or the victim's daughter. Per the parties' agreement, the trial court read the following stipulation to the jury:

> In this case, the stipulated facts you must accept as true are as follows:
>
> The State and the Defense stipulate and agree that Steven Beebe was convicted of a qualifying offense and Steven Beebe was ordered to have no contact with [the victim] and [the victim's daughter] for the duration of the sentence for that qualifying offense. The duration of the sentence includes the time period [of] February 17, 2014, until April 3, 2014.
>
> Any questions on that? So, these facts come in, in lieu of evidence or testimony. So these facts are agreed to be actual facts in this case.

(Doc. 10-2, Ex. 1, trial transcript pp. 269-70.)[3]

## B. Factual Background

When the victim's daughter was 16 years old, she worked at a Panera Bread that Beebe patronized. (*Id.*, pp. 186-87, 221.) Beebe and the victim's daughter began socializing in the same group of friends. (*Id.*, pp. 186-87, 221-22.) The victim later learned that her daughter was friends with Beebe; the victim met him in the spring of 2012. (*Id.*) The victim

---

[3] It appears that, without a stipulation, the fact that Beebe's prior conviction was for aggravated stalking would have been disclosed to the jury to establish that the prior conviction was for one of the qualifying offenses listed in § 921.244(1), Fla. Stat. (*See* Doc. 10-2, Ex. 25, p. 5.)

spoke with Beebe in-person and heard his voice. (*Id.*, p. 187-88.) After the in-person meeting, the victim also heard Beebe's voice during several phone conversations and on several voicemails. (*Id.*, p. 217.)

Deputy Denetrias Harris-Brown testified that she served Beebe with the injunction obtained by the victim. (*Id.*, p. 235.)[4] The associated paperwork did not state whether she identified him through his driver's license or other state-issued identification card, but Deputy Harris-Brown testified that she would have identified him. (*Id.*, pp. 236, 238-39.)

As addressed, Beebe was convicted of aggravated stalking and ordered, as a condition of the probation imposed for that conviction, not to have contact with the victim or the victim's daughter. The victim and the victim's daughter were aware that a state court had entered this no-contact order in 2013. (*Id.*, pp. 189, 223.) After the order's entry, however, the victim began to receive many phone calls. (*Id*, p. 189-90.) The phone calls began on February 15, 2014, when the victim received a phone call from a restricted number. (*Id.*, pp. 190-91.) On February 17, 2014, the victim received numerous calls from a restricted number. (*Id.*, pp. 190-92.) She testified that the calls came in at the rate of two or three times a minute, for a total of more than 50 calls; when she answered one call, she

---

[4] The victim's testimony did not disclose the circumstances leading to the issuance of the injunction. (Doc. 10-2, Ex. 1, trial transcript, pp. 188-89.)

heard Beebe say, "Why are you doing this? You're going to get me arrested." (*Id.*, pp. 192, 193.) The victim recognized Beebe's voice and called the police. (*Id.*, pp. 192-93.)

Deputy Guy Habercom responded to the victim's house on February 17, 2014. (*Id.*, pp. 260-61.) As he observed the victim's phone, it received five calls from a restricted number. (*Id.*, p. 261.) Deputy Habercom left the victim's residence for a period; upon his return, her cell phone showed that 17 more calls had come in while Deputy Habercom was gone. (*Id.*, p. 261.) On the same day, February 17, 2014, the victim's daughter received upwards of 50 calls, the majority of which were from a restricted number. (*Id.*, p. 224.) The victim's daughter inadvertently answered some calls "in the process of trying to make [her] own calls" and would immediately hang up. (*Id.*, p. 227.) She did not speak to anyone on the phone. (*Id.*)

The victim received more calls beginning March 18 through March 21, 2014. (*Id.*, p. 194.) She called the police on March 21, 2014; because she was receiving so many incoming calls it was difficult for her to place an outgoing call. (*Id.*, pp. 194-95.) The calls were again from a restricted number. (*Id.*, p. 195.) Deputy Antonio Jurado responded to the victim's residence. (*Id.*, p. 241.) While he was there, the victim received two phone calls. (*Id.*, p. 242.) Deputy Jurado answered the phone and heard a man's voice. (*Id.*, p. 242.) Each time Deputy Jurado referred to the caller as "Steven," the caller would respond, and never corrected Deputy Jurado about the name. (*Id.*, pp. 242-43.) The conversation

8

was on speakerphone, and the victim recognized Beebe's voice. (*Id.*, pp. 197, 242.) Deputy Jurado looked at the victim's call log and saw 51 calls from a restricted number on March 21, 2014. (*Id.*, p. 244.) The victim testified that she received hundreds more calls on March 22 and 23, but that she did not want to keep calling the police. (*Id.*, pp. 197-98.) She stated that the incoming calls on those days would continue for hours at a time, and she "unplugged or turned off her phones." (*Id.*, p. 198.)

On April 3, 2014, the victim answered another call from a restricted number. (*Id.*, pp. 198-99.) She recognized Beebe's voice. (*Id.*, p. 199.) He told her to go to a website whose domain name contained her daughter's name. (*Id.*, p. 199.) The victim called the police again and visited the website as directed by Beebe. (*Id.*, pp. 202-03.) The website claimed that the victim's daughter was engaging in illegal activities and made statements about her place of employment. (*Id.*, pp. 203-06.) Corporal Steven Hole responded to the victim's residence on April 3, 2014. (*Id.*, pp. 266-67.) He observed the website and saw that it contained statements about the victim's daughter's alleged illegal activities. (*Id.*, pp. 267-68.) The website's contents were being edited as Corporal Hole was viewing the website. (*Id.*, pp. 268-69.)

The jury convicted Beebe as charged on all counts regarding both the victim and her daughter.

## II.   <u>STANDARD OF REVIEW UNDER SECTION 2254</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Beebe brings several claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

13

The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on

14

claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   <u>ANALYSIS</u>

### A. Ground One

Beebe asserts a violation of his federal due process rights "because there is a substantial and legitimate doubt as to his competency at the time of his trial." (Doc. 1, p. 16.) Beebe states that when his attorney raised the question of competency before trial, the state trial court appointed Dr. Jill Poorman to examine him. Although Dr. Poorman met with Beebe on several occasions and opined that he was competent to proceed, Beebe contends that the record raises doubts about his competency "that are not refuted by Dr. Poorman's cursory meeting with him the morning of trial." (*Id.*, p. 17.)

Beebe points to Dr. Poorman's statements on the morning of trial in which she acknowledged that Beebe had several health issues, including mental health issues, and indicated that he was not receiving medication:

> THE COURT: [ ] In an abundance of caution, I asked Dr. Poorman to please evaluate Mr. Beebe to make sure that he is still competent.
>
> Have you had an opportunity to speak with him and evaluate him, Dr. Poorman?

15

DR. POORMAN: I did, Your Honor. I met with him first on 5/6/13, I thought he was competent. I then met with him again on January 22nd, '15, and that was for competency and also for pro se. And at that time, I felt that he was competent enough to go pro se, based upon *Edwards v. Indiana.*[5]

I did meet with him again, in fact, in the back, just now. My opinion is that he is competent within all six criteri[a].[6]

I called the jail. He's been in general population for quite some time now. He is being prescribed blood pressure medication. I would recommend to the Court - - he indicates he hadn't gotten his blood pressure medication.

I know that either he could be transported back or they could come over here to give him his dosage if, in fact, that's true that he has not gotten the meds. It just might help to take the edge off a little bit. He's very high strung right now, but I do think that he is competent.[7]

THE COURT: All right. Please raise your right hand. Do you swear or affirm that everything you just said is true and everything you are going to say is true?

---

[5] *See Indiana v. Edwards*, 554 U.S. 164 (2008) (holding that the Constitution does not prohibit a State from insisting that a criminal defendant proceed to trial with counsel if the defendant is competent to stand trial but not competent to conduct the trial himself).

[6] Florida Rule of Criminal Procedure 3.211 provides six criteria for an expert to consider when examining a criminal defendant for competency to proceed. These criteria are the defendant's capacity to: (1) appreciate the charges or allegations; (2) appreciate the range and nature of possible penalties; (3) understand the adversary nature of the legal process; (4) disclose pertinent facts to counsel; (5) manifest appropriate courtroom behavior; and (6) testify relevantly. Fla. R. Crim. P. 3.211(a)(2)(A)(i)-(vi).

[7] The record suggests that at some point during the trial proceedings, Beebe received his blood pressure medication. (Doc. 10-2, Ex. 1, trial transcript, p. 174.)

DR. POORMAN: I do, Your Honor, yes.

THE COURT: All right. Any questions by the State?

[PROSECUTOR]: No, Judge.

THE COURT: Any questions by the Defense?

[COUNSEL]: Just briefly, Your Honor.

Dr. Poorman, although you find him competent, would you agree that he does have some significant personality disorders?

DR. POORMAN: Yes. He had three reports from three different doctors, Dr. McClain, Dr. Taylor, and another doctor  - - I can't remember who the other doctor was - - and all three doctors both hit on bipolar disorder, obsessive compulsive disorder and personality disorders, yes.

And I think two of the doctors that I saw - - I read the reports very quickly, obviously, just the conclusionary portion, but they did recommend that he would be a candidate for some - - a mood stabilizer.

[COUNSEL]: Such as?

DR. POORMAN: Like Depakote.

[COUNSEL]: Okay. In your experience, is it possible to get someone like Mr. Beebe prescribed that medication through the jail if he's not coming into the jail and already on medication?

DR. POORMAN: If they don't agree with that, no, it will not happen.

[COUNSEL]: Okay. Thank you.

THE COURT: All right. Then I don't anticipate this being an issue, but do you feel that he's competent to proceed pro se, if it comes to that, under *Edwards v. Indiana*?

DR. POORMAN: I do.

(Doc. 10-2, Ex. 1, trial transcript pp. 9-12.)

Beebe further relies on the testimony of Dr. Valerie McClain, who examined him and testified at his sentencing hearing. Dr. McClain diagnosed Beebe as suffering from mood disorder due to head trauma, obsessive compulsive disorder, autism spectrum disorder without intellectual impairment, a mild neurocognitive disorder due to brain trauma, alcohol use disorder, and cannabis use disorder. (Doc. 10-2, Ex. 1, sentencing hearing transcript pp. 9-10.) Dr. McClain opined that Beebe's head trauma affected his ability to regulate his behaviors, emotions, and impulse control. (*Id.*, pp. 12-13.) She believed that medication was needed to address his mental health disorders. (*Id.*, p. 18.)

18

Beebe also argues that the trial transcript shows he was incompetent. On the first day of trial, Beebe told the court he was in the "middle of a manic episode," was mentally ill, and was hearing voices and zoning out. (Doc. 10-2, Ex. 1, trial transcript pp. 15, 19.) When the trial court asked him if he wanted to represent himself, Beebe responded that he needed to "stabilize [his] mind before [he] can make a decision on anything." (*Id.*, p. 26.) Beebe also argues that the record shows that he failed to manifest appropriate courtroom behavior by regularly interrupting the proceedings and making multiple outbursts that "demonstrated a lack of connection to the proceedings before the Court." (Doc. 1, p. 19.) Beebe also states that his mental health issues "hindered his attorneys' efforts to assist him." (*Id.*) He claims that the record shows he was uncooperative and unable to appropriately consult with his attorneys and was fixated on irrelevant matters. (*Id.*)

Beebe raised a substantive due process claim in his postconviction motion. The state postconviction court dismissed the claim as not cognizable in a postconviction proceeding. (Doc. 10-2, Ex. 25, pp. 3-4.) Ordinarily, a petitioner's failure to exhaust a claim by raising it in state court in accordance with the state's established procedures results in a procedural default. *See Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). Despite that ordinary rule, *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245

(11th Cir. 2002), recognized that these kinds of "substantive due process mental competency claim[s]" "generally cannot be defaulted" under circuit precedent, *id.* 1258-59. Thus, Beebe may bring ground one in his federal habeas petition despite the postconviction court not addressing it on the merits.

*Wright* set out the standard for evaluating a substantive due process mental competency claim on federal habeas review:

> As we have held, "'a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence.'" *Medina* [*v. Singletary*, 59 F.2d [1095,] 1106 [(11th Cir. 1995)] (quoting *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992)). Only "[a] petitioner who presents clear and convincing evidence creating a real, substantial, and legitimate doubt as to his competence to stand trial is entitled to a hearing on his substantive competency claim." *Id.* (internal quotation marks and citations omitted). The point is that on this claim, "the standard of proof is high and the facts must positively, unequivocally, and clearly generate the legitimate doubt" about whether the petitioner was mentally incompetent when he was tried. *Id.* (internal quotation marks, brackets, and citation omitted).

*Id.* at 1259.

The conviction of a mentally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375 (1966). The standard for competency to proceed is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree

of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960);[8] *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

Beebe has not demonstrated that he was incompetent to proceed to trial under this rigorous standard. Although the testimony of Dr. Poorman and Dr. McClain supports Beebe's contentions about his mental health, such mental health concerns do not necessarily establish incompetency. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quoting *Card v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)).

Additionally, Dr. Poorman met with Beebe and found him competent to proceed on several occasions. The state trial court entered an order on January 29, 2015, finding Beebe competent to proceed based on Dr. Poorman's testimony at that time. (Doc. 10-2, Ex. 1, appellate record p. 33.) And Dr. Poorman met with Beebe the morning of trial at

---

[8] The *Dusky* standard is set out in Florida law. *See* § 916.12(1), Fla. Stat.; Fla. R. Crim. P. 3.211(a)(1).

the state trial court's request; by continuing with the trial proceeding that day, the court implicitly accepted Dr. Poorman's opinion that Beebe remained competent to proceed. "A presumption of correctness attaches to a state court's finding of competence and a federal habeas court must determine that the finding is not fairly supported by the record before it may overturn the state court's decision." *Medina*, 59 F.3d at 1106 (internal quotation marks omitted).

A review of the trial transcript supports the conclusion that Beebe was competent to proceed. As Beebe notes, the transcript reflects that Beebe made several statements about his mental health and also interrupted the trial court and acted impudently at times. Although Beebe claims these portions of the record show he was incompetent, the trial transcript reflects that Beebe understood the nature of the proceedings and the topics discussed, had prepared his own motions, and had at least some familiarity with Florida law and procedure.

For instance, before voir dire, Beebe engaged with the trial court about attempting to file a pro se motion to disqualify the court. Beebe repeatedly interrupted the court while discussing this motion. (Doc. 10-2, Ex. 1, trial transcript, pp. 13-31.) Additionally, after Beebe attempted to pursue his motion despite the court's refusal to hear the motion because Beebe's attorneys did not adopt it, his attorney told him to stop talking and the court told him he could be gagged if he did not stop talking. (*Id.*, pp 18-22.) But Beebe responded,

22

"Oh, no, no, no. I'm good," indicating that he comprehended the court's remarks and the potential consequence of his behavior. (*Id.*, p. 22.) He apologized after the court warned him not to "interrupt, people," following Beebe interrupting his attorney. (*Id.*, p. 17.) Additionally, Beebe's ability to readily discuss his mental health issues and examinations, as well as whether the defense of not guilty by reason of insanity was available to him,[9] indicates an understanding of the proceedings. (*Id.*, pp. 13-31). When Beebe's attorneys declined to adopt his pro se motion to disqualify, Beebe expressed his intention to proceed pro se in order to pursue the motion, thereby indicating his understanding that he could not proceed on a motion that his attorneys refused to adopt. (*Id.*, p. 19.)[10]

After voir dire, Beebe indicated to the trial court that he knew he could talk to his attorneys about jury selection and that he understood the process of choosing jurors, including the parties' ability to exercise strikes. (*Id.*, p. 141.) Beebe also indicated that he wished to discharge the attorney assigned to a 2016 case filed against him. On a day when the trial testimony finished early, the trial judge (who was apparently assigned to the 2016 case) agreed to permit the attorney representing Beebe on the 2016 case to come to the

---

[9] Defense counsel stated that Beebe was evaluated by Dr. Donald Taylor, who opined that Beebe was competent and he did not qualify as not guilty by reason of insanity. (Doc. 10-2, Ex. 1, trial transcript p. 17.)

[10] Ultimately, the trial court proceeded without an inquiry under *Faretta v. California*, 422 U.S. 806 (1975), upon finding that Beebe did not make an unequivocal request to represent himself. (Doc. 10-2, Ex. 1, trial transcript, pp. 29-31)

courtroom to address Beebe's motion. (*Id.*, p. 250.) Beebe said there was no need to do so because he needed more time to think about it. (*Id.*, p. 251.) Although Beebe stated he was overwhelmed and confused (*see id.*, pp. 251-52), such representations do not equate to incompetency within the meaning of *Dusky*. Rather, it is apparent that Beebe understood the court's offer to secure the other attorney's presence and conduct a hearing, but decided not to proceed at that time.

Later, following the defense motion for judgment of acquittal, Beebe interacted with the trial court, presenting a motion to disqualify and discussing other motions. (*Id.*, pp. 280-82.) The trial court explained that since Beebe's motions concerned cases other than the case on which trial was underway, the court would not hear those motions at that time. (*Id.*, pp. 281-83.) Despite being somewhat argumentative with the court, Beebe appeared to understand the court's statements and asked that his motion to disqualify nevertheless be accepted because "the law says I have to present this to you immediately." (*Id.*, p. 284.) This may be a reference to a procedural rule that required filing a motion to disqualify within 10 days of discovery of the facts constituting the grounds for the motion. *See* Fla. R. Jud. Admin. 2.330(e) (2009).[11] When the judge again offered to address matters in Beebe's other case after the jury started deliberating, Beebe declined. (*Id.*, p. 359.) Beebe

---

[11] The rule was later amended to expand the time frame from 10 days to 20 days. *In re Amendments to Fla. Rules of Jud. Admin.—2020 Regular-Cycle Report*, 310 So.3d 374 (Fla. 2021).

argued with the judge about whether he withdrew his earlier requests to address the matters, or whether the judge rejected his requests. (*Id.*, pp. 359-60.) However, there is no indication that Beebe lacked an understanding of the nature of the proceedings. (*Id.*)

Beebe also participated in a colloquy about his decision not to testify. He conveyed his understanding that whether to testify was his decision, and stated that he agreed with his attorneys that testifying was not in his best interest. (*Id.*, pp. 284-85, 287.) While Beebe attempted to talk about his other cases, the record shows that he understood that whether to testify was his decision and that he believed testifying was not in his best interest. (*Id.*)

This review of the record satisfies the Court that Beebe fails to present "clear and convincing evidence creating a real, substantial, and legitimate doubt as to his competence to stand trial[.]" *Wright*, 278 F.3d at 1259. The record conveys Beebe's understanding of the proceedings, despite the demeanor he sometimes displayed. *See Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005) ("That Battle at times exhibited an antagonistic relationship with his lawyers over their representation of him is no indicator of incompetency. . . . Neither do Battle's courtroom outbursts, odd behavior, and history of mental illness mandate a finding of incompetency."); *Medina*, 59 F.3d at 1107 (stating that "bizarre, volatile, and irrational behavior" cannot be "equated with mental incompetence to stand trial"). Finally, Beebe does not explain his conclusory allegations that he was unable to assist his attorneys, and a review of the record does not readily reveal such a concern.

Beebe fails to show that he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him" at the time of trial. *Dusky*, 362 U.S. at 402. Because he fails to show that he was tried while incompetent in violation of his federal due process rights, Beebe is not entitled to relief on Ground One.

## B. Ground Two

Beebe argues that trial counsel was ineffective for withdrawing a motion to sever the count of aggravated stalking from the four counts of violation of a court order. The motion asserted that severance was appropriate because proving the elements of violation of a court order would require the State to establish Beebe's prior conviction and sentence for a qualifying offense. (Doc. 10-2, Ex. 1, appellate record pp. 54-55.) Beebe argued that evidence of this prior conviction would undermine his presumption of innocence for the pending aggravated stalking count. (*Id.*, p. 55.)

Counsel withdrew the motion. Counsel expressed his understanding that the State might intend to file additional charges against Beebe. He agreed that the defense wished to proceed to trial on all five counts if a stipulation was entered acknowledging Beebe's prior conviction for a qualifying offense without disclosing that the qualifying offense was aggravated stalking. (Doc. 10-2, Ex. 1, trial transcript pp. 6-7, 32-34.) Counsel explained that with a stipulation, "[w]e would then agree to try all of them together. I still believe

that will be in Mr. Beebe's best interest given the State's assertion that they may file another charge. I think it would be best for him to go forward with everything and then he'd have a double jeopardy argument, if the State filed later." (Doc. 10-2, Ex. 1, pp. 32-33.) Beebe proceeded to trial on all five counts.

The state postconviction court rejected Beebe's ineffective assistance of trial counsel claim, finding that "Defendant is not entitled to relief on ground two because this was a reasonable trial strategy and Defendant was not prejudiced." (Doc. 10-2, Ex. 25, p. 4.) The court noted that "[c]ounsel indicated that the State intended to file additional charges, and counsel hoped that trying the cases simultaneously would give rise to a double jeopardy argument if the State filed future charges." (*Id.*) The court concluded that counsel's strategy was reasonable because "it gave rise to a possible double jeopardy argument if the State filed later charges." (*Id.* pp. 4-5.) In response to Beebe's assertion that only the aggravated stalking charge supported a double jeopardy argument, the court found that counsel's strategy was reasonable in that "the only way counsel could have ensured that the aggravated stalking was tried at that time was to waive Defendant's motion" since the State would have had discretion as to which charge to try first. (*Id.*, pp. 4-5.)

Moreover, the state court found that "Defendant was not prejudiced because there is not a reasonable probability that the outcome of severed trials would have been different from the outcome of the consolidated trial." (*Id.*, p. 5.) First, the court found that the

27

prejudicial impact of evidence of Beebe's prior qualifying conviction was "significantly mitigated" by the circumstances. (*Id.*) The court noted that by agreeing to the stipulation, "counsel thereby avoided the jury learning" the nature of the qualifying offense. (*Id.*) The court also noted that "because count one [aggravated stalking] required proof that there had been an injunction for repeat violence entered against Defendant, even if the jury was not aware he had a prior conviction [as required to prove violation of a court order], the jury would have known that Defendant likely did something in the past to justify that injunction." (*Id.*)

The court found Beebe's claim that the evidence against him was "extremely thin" to be "an exaggeration" and addressed the State's significant evidence of guilt on the aggravated stalking charge. (*Id.*) The court found speculative Beebe's argument that Deputy Harris-Brown might have served someone else because the paperwork did not specify how she identified Beebe. (*Id.*) The court noted that no evidence contradicted Deputy Harris-Brown's testimony that she served Beebe with the injunction; that law enforcement officers testified to the victim's mental state; and that the "[t]he circumstances of this case were also highly likely to cause emotional distress" such that "[i]t is unlikely that the jury would have found that the victim did not suffer emotional distress if the charges were severed." (*Id.*)

28

The court further noted that "[e]ven if the jury would have made the impermissible inference that Defendant had a propensity to violate the law, that would not affect whether he was served with the injunction or whether the victim was distressed." (*Id.*) The court stated that "none of these issues were strenuously disputed at trial—the primary dispute was whether Defendant was the one who made the phone calls." (*Id.*) Regarding identity, the court noted that "the evidence was strong enough that it is not reasonably likely that the result would have differed with severed trials." (*Id.*, p. 6.) The court cited the victim's testimony that she was familiar with Beebe's voice and recognized it on the phone calls; Deputy Jurado's testimony that the person he talked to on the phone answered to "Steven" and did not correct him; and evidence of the pattern of nonstop calls the victim's daughter received, which were "similar to the ones received by the other victim occurring at around the same time from a restricted number." (*Id.*) The court concluded that, "[g]iven this evidence, even if counsel had severed the trials, there is not a reasonable probability of a different outcome." (*Id.*)

Beebe does not show entitlement to relief. The state court's finding that trial counsel's decision was strategic is a finding of fact entitled to a presumption of correctness. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct."

29

(quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))). Beebe does not rebut the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Beebe contends that trial counsel's decision—whether properly deemed strategic or not—was patently unreasonable. (Doc. 1, p. 23); *see Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect.") (quotation and internal citation marks omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.").

Beebe also contends that the court's finding regarding counsel's strategy is inconsistent with its ruling, addressed in Ground Five, *infra*, that there was no double jeopardy violation in this case. But just because the court found that there was no double jeopardy violation regarding the counts on which Beebe was in fact tried and convicted does not mean that any double jeopardy challenge to potential future criminal charges

would also lack merit. Counsel clearly believed that proceeding to trial on all pending charges would provide a basis to head off additional criminal charges in the future since double jeopardy principles prohibit multiple trials for the same offense after a conviction or an acquittal. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Beebe has not met his burden of showing that counsel's strategic choice was so patently unreasonable that no competent attorney would have pursued it. *See, e.g., Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding. . . . [I]t is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.") (internal citation and quotation marks omitted). Thus, Beebe does not show that the state court unreasonably concluded that his attorney made a reasonable strategic decision to withdraw the severance motion.

Nor does Beebe show prejudice as a result of counsel's actions. Beebe asserts that if he proceeded to trial only for aggravated stalking, the jury would not have learned of his qualifying conviction (which established an element of the counts of violation of a court order) and evidence of hundreds of phone calls. However, as the state court observed, even if the aggravated stalking charge was tried separately, the jury still would have learned that there had been an injunction entered against him and thus the jury "would have known

31

that Defendant likely did something in the past to justify that injunction." (Doc. 10-2, Ex. 25, p. 5.) And as addressed, the state court also thoroughly considered the overall evidence of guilt in its comprehensive order, finding that there was no reasonable probability of a different outcome had separate trials been held. (*Id.*, pp. 5-6.) Beebe does not show that the state court's prejudice ruling was unreasonable. Because Beebe does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Two.

## C. Ground Three

Beebe contends that the prosecutor failed to disclose records for the victim's phone number that could have impeached the victim, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Beebe asserts that after trial, he found these records and "learned for the first time . . . that the Pinellas County Sheriff's Department had these records in its possession." (Doc. 1, p. 26.) Beebe claims that the records show a completed phone call of 6 minutes and 11 seconds between him and the victim on March 20, 2014. (*Id.*) He also contends that the records show another completed phone call of six minutes and 24 seconds between him and the victim on March 22, 2014. (*Id.*)

Beebe claims that this evidence could have been used to impeach the victim, who he states "testified at trial regarding only three calls to her [on different dates] that were answered," but "never acknowledged that there had been two [other] calls that were more

than six minutes in length" and testified that she had "unplugged [her] phones or turned them off" on March 22, 2014. (*Id.*) Beebe further contends that the records could have been used to impeach the victim to the extent that she testified at deposition that she usually hung up if she heard Beebe's voice. (*Id.*, p. 27.) Alternatively, Beebe argues that trial counsel was ineffective for not uncovering these records to use for impeachment. He contends that "a reasonably prudent attorney would have taken steps to obtain those records." (Doc. 1, p. 27.)

When Beebe presented the *Brady* claim in his initial postconviction motion, the state postconviction court struck Beebe's claim as insufficiently pleaded, and it allowed him an opportunity to file an amended motion. (Doc. 10-2, Ex. 22, pp. 2.) The court reserved ruling on his ineffective assistance of counsel claim. (*Id.*, pp. 5-6.)

After Beebe filed his second amended motion, the state postconviction court denied both the *Brady* and ineffective assistance of trial counsel dimensions of the claim as insufficiently pleaded. (Doc. 10-2, Ex. 25, pp. 6-7.) The state court determined that Beebe's *Brady* claim was insufficient because he failed to allege that he could not have obtained the evidence. (Doc. 10-2, Ex. 25, p. 7.) The court likewise found Beebe's ineffective assistance claim insufficiently pleaded because he failed to explain how the evidence would have changed the outcome of the trial. (*Id.*) Thus, the state court concluded that "this claim is facially insufficient under either theory[.]" (*Id.*)

33

The denial for facial insufficiency was a resolution of the claim on the merits. *See Borden v. Allen*, 646 F.3d 785, 808-16 (11th Cir. 2011) (examining a state postconviction court's rejection of a claim for failure to plead the claim with sufficient specificity and stating that the state court's "consideration of the sufficiency of the pleadings concerning a federal constitutional claim [in a postconviction motion] necessarily entails a determination on the merits of the underlying claim"); *Gaedtke v. Sec'y, Dep't of Corr.*, 369 F. App'x 12, 13-14, 16 n.2 (11th Cir. 2010) (stating that a state court's denial of an ineffective assistance claim as facially insufficient when the petitioner did not allege he was prejudiced and therefore "failed the prejudice prong of *Strickland*" was a denial on the merits entitled to deference under § 2254(d)(1)).

The state court did not unreasonably determine that Beebe failed to allege that he could not have discovered the evidence through the exercise of due diligence, a requirement for establishing a *Brady* claim. *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, a petitioner must show that "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of*

*Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). Importantly though, "[a] defendant cannot meet the second prong when, 'prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged *Brady* material.'" *Id.* (quoting *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005)). Here, Beebe's second amended motion contained no allegation that he could not have uncovered the phone records or that he lacked knowledge of the two 6-minute phone calls, particularly in the light of him being the one who placed the calls. (Doc. 10-2, Ex. 24, pp. 5, 16-17.)

Nor did the court unreasonably determine that Beebe failed to show prejudice under *Strickland* because Beebe did not allege a reasonable probability that the outcome would have been different had counsel utilized the records to cross-examine the victim. Beebe's second amended motion[12] only presented a conclusory assertion that there was a reasonable probability the outcome would have been different, without further explanation. (*Id.*, pp. pp. 5, 9-11, 16-17.)

The court additionally found that "even if this claim were sufficient, the record is clear that Defendant was not prejudiced because these records are highly inculpatory: they would have contradicted Defendant's primary defense." (Doc. 10-2, Ex. 25, p. 7.) The

---

[12] Although the state court reserved ruling on the ineffective assistance of trial counsel claim raised in Beebe's original postconviction motion, the state court noted that the second amended motion amended claims upon which the court reserved ruling. (Doc. 10-2, Ex. 25, p. 2.) Therefore, the state court proceeded on the second amended motion in making its final ruling. (*Id.*)

court noted that, if the phone numbers in the records indeed belonged to Beebe and the victim, then they established hundreds of phone calls during the relevant time period and found that "[t]his evidence would therefore corroborate the victim's testimony to a far greater extent than it would have impeached her" because it "would prove that Defendant was the one who made these calls, and that there were a large number of calls as the victim testified." (*Id.*)

The state court noted that Beebe's theory of defense was a lack of evidence proving his identity, and that "counsel specifically argued that the State had not introduced cell phone carrier records—effectively arguing that the jury should find him not guilty because the State had not produced these very records." (*Id.*) The introduction of the records, the court thus found, "would have been catastrophic to Defendant's primary defense at trial." (*Id.*) The court noted that while the records appeared inconsistent with the victim's testimony, their impeachment value was "exceedingly low" because "the fact that there were two additional answered phone calls between these numbers does not show that the State did not meet its burden on any element of the crime." (*Id.*) Thus, the court concluded that the records' impeachment value was "far outweighed by their potential harm to Defendant's case." (*Id.*)

Beebe does not show that the state court unreasonably found that he was not prejudiced by the omission of this evidence. The record shows that trial counsel focused on

challenging the State's evidence of identity. Counsel used a significant portion of his closing argument to assert that the State failed to show who made the calls and that the State failed to meet its burden of proof because its theory of guilt was based on assumptions by the victim and her daughter that Beebe was responsible. (Doc. 10-2, Ex. 1, trial transcript pp. 325-38.)

Beebe did not show that he was prejudiced under *Brady* because the records were not material. *See Wright,* 761 F.3d at 1278 (stating that the prejudice prong, "also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). Similarly, Beebe did not show *Strickland* prejudice because he did not establish a reasonable probability of a different outcome at trial had counsel uncovered and presented the records.

Beebe fails to show that the court's ruling was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. Accordingly, he is not entitled to relief on Ground Three.

### D. Ground Four

Beebe argues that trial counsel was ineffective for failing to object when law enforcement officers testified to matters outside their personal knowledge. Beebe cites two officers' testimony about the victim's demeanor during the investigation. Deputy

Habercom responded to the victim's residence on February 17, 2014, and observed

incoming calls on the victim's cell phone from a restricted number. He testified:

> Q.    And during the course of your investigation, what was [the victim's]
> demeanor?
>
> A.    She was very emotionally distressed.
>
> [COUNSEL]: Objection, Your Honor. Speculation.
>
> THE COURT: Overruled.
>
> THE WITNESS: She was shaky and she was honestly worried.

(Doc. 10-2, Ex. 1, p. 265.)

Corporal Hole responded to the victim's home on April 3, 2014, and saw the

website about the victim's daughter. He testified at trial:

> Q.    And how was [the victim's] demeanor when you were going through
> this and reading the blog?
>
> A.    She was very upset. She was really kind of scared for her daughter and
> scared that all these things were leading - -
>
> [COUNSEL]:      Objection. Speculation.
>
> THE COURT:      All right. Overruled.

38

THE WITNESS:  Scared that all these things were being put out on the internet so anyone could look at it and it was kind of really negative.

(*Id.*, p. 268.)

Although counsel objected to the testimony as speculative, Beebe contends that the testimony was subject to further objection because the witnesses lacked personal knowledge of the victim's mental state and because any knowledge they had constituted hearsay to the extent it might have been based on statements by the victim to the officers. (Doc. 1, pp. 29-30.) Beebe claims that, absent this law enforcement testimony, he would not have been convicted of aggravated stalking because the State offered no other evidence to demonstrate that the course of conduct caused the victim "substantial emotional distress." (*Id.* p. 30.)

The state postconviction court denied Beebe's claim, finding the claim "without merit because counsel did object and the evidence was properly admitted." (Doc. 10-2, Ex. 25, p. 8.) The court found that "[w]hile Defendant appears to argue that the witnesses also lacked personal knowledge, his argument to support that objection is essentially the same as the argument to support an objection based on speculation." (*Id.*) Additionally, the state court found that the testimony was admissible under Florida evidentiary law. The state court pointed out that "a lay witness may testify about another's mental condition if it is based on personal knowledge or observation." *Spencer v. State*, 842 So.2d 52, 69-70 (Fla. 2003)." (*Id.*) The court found that the evidence established Deputy Habercom and

Corporal Hole had sufficient opportunity to observe the victim and her reactions. (*Id.*) The court concluded that "[t]he officers therefore clearly had personal knowledge sufficient to opine as to her emotional state." (*Id.*)

Beebe does not show that the state court unreasonably denied his claim. First, as the state court observed, counsel objected to the testimony on "essentially the same" grounds as Beebe now claims he should have raised. The objection counsel raised—speculation—indicates that the witness lacks personal knowledge of the topic about which the witness is being questioned. Thus, Beebe fails to show that counsel was ineffective simply because he did not phrase his objection as "lack of personal knowledge" rather than "speculation."

Additionally, in reviewing Beebe's ineffective assistance claim, this Court must defer to the state court's conclusion that "the testimony was admissible" under state evidentiary law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005)

40

("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection."). Because the state court has determined that the testimony was properly admitted under Florida evidentiary law, Beebe fails to establish that counsel was ineffective for not objecting as he proposes.

Beebe asserts that the court failed to address all his supporting arguments. He claims that the court "did not address the point that the State failed to lay the necessary foundation to establish the officers actually *did* have personal knowledge regarding [the victim's] emotional state." (Doc. 1, p. 31.) But this argument was implicitly rejected through the state court's finding that the evidence showed that the officers had an opportunity to observe the victim and her reactions such that they could testify about her mental state consistent with Florida law.

Beebe also contends that the court failed to address his "point that the officers' knowledge of [the victim's] mental state may have been based on hearsay." (*Id.*) By finding that the officers' testimony was based on their observations of the victim and was admissible, however, the court also implicitly rejected Beebe's argument that their testimony might have been based on impermissible hearsay. And Beebe only speculates

41

that the officers' testimony was possibly based on impermissible hearsay; the officers did not testify to any specific statements of the victim. *See* § 90.801(1)(c), Fla. Stat. (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). This speculation is insufficient to show entitlement to federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). Beebe does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ineffective assistance claim concerning the testimony of Deputy Habercom and Corporal Hole.[13] Beebe is not entitled to relief on Ground Four.

## E. Ground Five

Beebe argues that his convictions violate the Double Jeopardy Clause of the Fifth Amendment and raises related claims of ineffective assistance of trial counsel. "The Double

---

[13] Within the same ground of his second amended postconviction motion, Beebe also claimed that trial counsel was ineffective for failing to object based on lack of personal knowledge when Deputy Jurado testified that Beebe "thought that nothing could touch him." (Doc. 10-2, Ex. 1, trial transcript, p. 243.) Because Beebe does not mention Deputy Jurado in the § 2254 petition, the Court presumes that Beebe does not intend to raise this portion of his ineffective assistance claim in his § 2254 petition. Even if Beebe so intends by his general references to the "ground" presented in the postconviction motion, Beebe fails to show that the state court's denial of his claim regarding Deputy Jurado involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

Jeopardy Clause . . . protects against multiple punishments for the same offense." *Brown*, 432 U.S. at 165 (internal quotation marks and citation omitted). The Double Jeopardy Clause permits cumulative punishments for a single incidence of criminal behavior when the legislature clearly intends cumulative punishments. *Williams v. Singletary*, 78 F.3d 1510, 1512 (11th Cir. 1996). Absent a clear indication of contrary legislative intent, the "same-elements" test announced in *Blockburger v. United States*, 284 U.S. 299 (1932), determines whether separate statutory provisions authorize cumulative punishment for a single criminal incident. *Williams*, 78 F.3d at 1512-13. The Fifth Amendment's Double Jeopardy clause applies to the States through the Fourteenth Amendment. *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306 (1984). In addition, Florida has adopted the *Blockburger* test. *See* § 775.021(4)(b), Fla. Stat.

The "same-elements" test examines whether each offense contains an element not contained in the other offense. "[I]f each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishment." *Williams*, 78 F.3d at 1513. Otherwise, "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." *United States v. Dixon*, 509 U.S. 688, 696 (1993).

Beebe asserts two double jeopardy theories.

### 1. Violation of Court Order as a Lesser-Included Offense of Aggravated Stalking

First, Beebe contends that his convictions violate double jeopardy because the offenses of violation of a court order on counts two, four, and five are "necessarily lesser included offenses" of aggravated stalking, the offense charged in count one. (Doc. 1, p. 31.) (These counts all concerned the victim, but not the victim's daughter.) Beebe also argues that trial counsel was ineffective for not raising this double jeopardy argument and for not seeking a jury instruction stating that counts two, four, and five were lesser included offenses of count one. (*Id.*)

Beebe raised this claim in his postconviction motion. The state postconviction court denied it, finding that Beebe "is not entitled to relief because his convictions do not violate double jeopardy—aggravated stalking and violation of a court order each require proof of an element the other does not." (Doc. 10-2, Ex. 25, p. 10.) The court also noted that numerous Florida decisions hold that a defendant "may be convicted of both aggravated stalking and violation of an injunction stemming from the same conduct" because each offense contains an element the other does not. (*Id.*)[14]

---

[14] Although Beebe contends that the state court misinterpreted these state decisions, to the extent he alleges an error of state law, such an error forms no basis for federal habeas relief. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). And as addressed in the body of this order, Beebe does not show that the state court's ruling on his federal claims was unreasonable.

The court conducted a "same-elements" test. It found that aggravated stalking, "as charged in this case, required proof that Defendant maliciously and repeatedly followed, harassed, or cyberstalked the victim and that an injunction for protection against repeat violence had been entered against Defendant, elements not required for" the counts of violation of a court order. (*Id.*) Meanwhile, the court found, the counts of violation of a court order "required proof that Defendant was convicted of a qualifying offense and that Defendant was ordered to have no contact with the victim for the duration of the sentence imposed for that qualifying offense, elements not required for" aggravated stalking. (*Id.*)

The state court further noted that "[w]hile aggravated stalking could be shown following an 'other court-imposed prohibition,' § 784.048(4), in this case the jury was exclusively instructed as to aggravated stalking under the injunction." (*Id.*) The court stated that "the injunction was separate and distinct from the order of no contact that formed the bases of counts two, three, and four." (*Id.*) The court concluded that there was no double jeopardy violation, and that "[c]ounsel was therefore not deficient and Defendant was not prejudiced." (*Id.*)

Beebe has not shown a double jeopardy violation on the basis that the aggravated stalking count subsumed the counts of violation of a court order that involved the same victim. The state court did not unreasonably determine that because each offense includes an element the other does not, Beebe's convictions on all counts did not violate double

jeopardy principles. *See* §§ 784.048(4), 921.244, Fla. Stat.; Doc. 10-2, Ex. 1, appellate record pp. 63-67. Beebe points to the state court's acknowledgment that under § 784.048(4), Fla. Stat., aggravated stalking requires proof of either an injunction against repeat violence *or* another court order prohibiting conduct with respect to the victim. *See, e.g.*, *United States v. Bobb*, 577 F.3d 1366, 1373 (11th Cir. 2009) (stating that determining whether "one set of elements is a subset of another" requires a court to "look to the statutory elements, not the way the offenses are charged in the indictment"). However, after acknowledging this statutory language, the court determined that "count one required proof of malicious and repeated harassment, while counts two, four and five required proof of conviction of a qualifying offense." (Doc. 10-2, Ex. 25, p. 10.) Thus, the court concluded, "these offenses were distinct" notwithstanding the statutory language identified by Beebe. (*Id.*)

Further, the state court did not unreasonably determine that Beebe failed to show ineffective assistance of trial counsel for not raising this double jeopardy claim or a related argument about the jury instructions. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").[15] Beebe does not show that the state court's denial of

---

[15] The record refutes Beebe's contention that the state postconviction court failed to rule on his ineffective assistance of trial counsel claims. The court identified Beebe's claims that counsel should have raised a double jeopardy argument and should have asked for an instruction on lesser-included offenses. (Doc. 10-

his claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination.

## 2. Violation of Probation

Beebe contends that his convictions for violating a court order (counts two through five) violate double jeopardy because he was also punished for the same conduct in his 2012 state court criminal case when his probation was revoked for failing to abide by the no-contact order and he was sentenced to prison.

Beebe moved the trial court to dismiss counts two through five on federal double jeopardy grounds. (Doc. 10-2, Ex. 1, appellate record pp. 50-53.) Beebe argued on direct appeal that the trial court erred in denying his motion. (Doc. 10-2, Ex. 3.) The state appellate court rejected his claim without discussion when it per curiam affirmed his convictions and sentences. (Doc. 10-2, Ex. 6.)[16]

---

2, Ex. 25, p. 9.) Upon finding that Beebe failed to establish a double jeopardy violation, the court found that trial counsel was not ineffective. (*Id.*, pp. 9-10.)

[16] The state trial court's denial of the motion to dismiss is not part of the state court record before this Court, nor does it appear that it was part of the record before the state appellate court that heard Beebe's claim of trial court error. The State's answer brief noted, "the court denied the motion after a pretrial hearing conducted on December 5, 2016. The transcript of the hearing has not been included as part of the record but appears unnecessary to properly address and resolve this issue on the merits" because the review of a denial of a motion to dismiss is de novo. (Doc. 10-2, Ex. 4, pp. 3-4.) This Court is limited to the record before the state court that adjudicated Beebe's claim. *See Cullen v. Pinholster*, 563 U.S. 170 (2011). Thus, neither the state trial court's reasons for the denial, or the state appellate court's reasons for affirming the trial court, are apparent based on the record this Court may consider. And because no reasoned decision was before the state appellate court, this Court considers what rationales the state appellate court could have relied on in denying the claim. *See, e.g., Richter*, 562 U.S. at 102 (stating that when there is no reasoned

Beebe fails to show that the state appellate court's ruling was unreasonable. Beebe was not punished twice for the acts of contacting the victim and her daughter in violation of the no-contact order. The sentence imposed following Beebe's violation of probation punished the underlying previously committed offenses and the breach of trust in violating his probation for those offense, not the new offenses themselves. *State v. Daniels*, 780 So.2d 148, 148-49 (Fla. 2d DCA 2000) (footnote omitted), explains that the purpose of a revocation of probation is distinct from punishment for the new offense itself:

> A probation revocation is a deferred sentencing for a *previously-committed offense. See Green v. State*, 463 So.2d 1139 (Fla. 1985). Because the proceeding does not subject the defendant to conviction or punishment for his *new offense*, the double jeopardy prohibition is not implicated. *See Green; State v. Justice*, 451 So.2d 1056 (Fla. 2d DCA 1984). We . . . remand for reinstatement of the charge [of possession of cocaine] and further proceedings.

Thus, Beebe has not established any double jeopardy violation simply because he was subsequently punished for the new law violation that also formed the factual basis for the probation revocation. Beebe relies heavily on *Dixon*, which the *Daniels* decision discussed. But *Dixon* is distinguishable from Beebe's case. Dixon violated the terms of his bail agreement by possessing cocaine. *Dixon*, 509 U.S. at 691. The act of possessing cocaine

---

state court decision, a federal habeas court "must determine what arguments or theories . . . could have supported[ ] the state court's decision").

48

both (1) resulted in a criminal conviction for contempt of court for violating the bail agreement and (2) also subjected Dixon to criminal prosecution for the crime of possession of cocaine. *Id.* at 691-92. The Supreme Court explained that contempt of court is a criminal offense.  *Id.* at 696, 699-700. Because, under these facts, "Dixon's drug offense did not include any element not contained in his previous contempt offense, his subsequent prosecution [for the drug offense] violates the Double Jeopardy Clause." *Id.* at 700.

Here, Beebe was not convicted twice for contacting the victim and her daughter in violation of the no-contact order. As *Davis* explains, a finding of violation of probation based upon his violation of the no contact order was just that—a finding of violation of probation. It was not a criminal prosecution for the new offenses of violations of the court order and therefore did not result in a conviction for, or punishment of, the new offenses in violation of double jeopardy.

The Eleventh Circuit addressed a similar question in *United States v. Woods*, 127 F.3d 990 (11th Cir. 1997). There, the defendant was on probation when he committed a robbery. *Id.* at 991. He admitted violating probation by committing the robbery; his probation was revoked and he was sentenced to prison on the earlier case. *Id.* The defendant sought dismissal of the robbery charge on double jeopardy grounds under *Dixon*. The Eleventh Circuit rejected that claim:

The Supreme Court's resolution of the claim at issue in *Dixon* does not alter our determination that revocation of probation for commission of a subsequent criminal offense does not constitute punishment for that criminal offense for purposes of double jeopardy; rather, revocation of probation constitutes a modification of the terms of the original sentence and implicates solely the punishment initially imposed for the offense conduct underlying that sentence. It is critical to note that, at the time he was adjudicated guilty with respect to the criminal contempt charge, the defendant in *Dixon* had been convicted of no other offense. Indeed, a prosecution and conviction for criminal contempt is punishment for the conduct constituting contempt of court, not for any underlying crime. *See United States v. Soto-Olivas,* 44 F.3d 788, 792 (9th Cir.), *cert. denied,* 515 U.S. 1127, 115 S.Ct. 2289, 132 L.Ed.2d 290 (1995). In *Dixon,* there was no underlying crime to punish. In the instant case, because Woods' commission of a criminal offense constituted a violation of the terms of his probation, it consequently provided grounds for the revocation of his probation. The punishment imposed in the form of probation revocation, however, was part of his original sentence and thus constituted punishment for the crime underlying that sentence. Contrary to Woods' suggestion, subsequent prosecution for the criminal conduct committed while on probation constitutes prosecution for an entirely new offense and is not precluded by the Double Jeopardy Clause.

*Id.* at 992.

Beebe contends that his case is different because the new offenses of violation of a court order was the very same conduct that caused the probation violation and thus "[t]he criminal offense is therefore inextricably intertwined with the revocation of probation –

they are, quite literally, the same offense." (Doc. 1, p. 40.) But as described above, there is no double jeopardy violation when a petitioner commits a new offense that also results in a finding of violation of probation, as the violation of probation is not punishment for the new offense. Beebe also cites language in *Johnson v. United States*, 529 U.S. 694, 700 (2000), explaining that if the Government took the position that revocation of supervised release was punishment for new offenses that violated the terms of that release, then a double jeopardy violation might arise "[w]here the acts of violation are criminal in their own right" and the subject of "separate prosecution." As the *Johnson* court went on to explain, however, "[t]reating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." *Id.* Again, the finding of violation of probation was not the same as a prosecution for, and conviction of, any new offense of violation of a court order and did not punish Beebe for any new offense.

Beebe does not show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable factual determination. It is Beebe's burden to make this showing. *See Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). As Beebe has not met his burden under the AEDPA, he is not entitled to relief on Ground Five.

## V.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Beebe must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Beebe has not made the requisite showing. Finally, because Beebe is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Beebe's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to terminate Craig Hanks as a Respondent in this action, to enter judgment against Beebe and in Respondents' favor, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on April 28, 2022.

Kathryn Kimball Mizelle
United States District Judge

52